UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOMERSAULT SNACK CO, LLC,<br><br>Plaintiff,<br><br>v.<br><br>BAPTISTA BAKERY, INC.,<br><br>Defendant. | Case No. 19-cv-03131-DMR<br><br>**ORDER ON DEFENDANT'S MOTION TO DISMISS**<br>Re: Dkt. No. 16 |

Plaintiff Somersault Snack Co, LLC ("Somersault") filed this action on June 5, 2019, alleging a breach of contract claim against Defendant Baptista Bakery, Inc. ("Baptista"). [Docket No. 1.] Baptista now moves to dismiss Somersault's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). [Docket Nos. 16 ("Mot."), 20 ("Reply").] Somersault timely opposed. [Docket No 19 ("Opp.").] The court held a hearing on September 17, 2019.

Having considered the parties' submissions and oral arguments, the court grants in part and denies in part the motion to dismiss.

I. **BACKGROUND**

The following facts come from the complaint. Somersault sells all-natural snacks in numerous states, including California. Compl. ¶ 8. It entered into a contract with Baptista, effective January 1, 2015, which provided that Baptista would be the sole manufacturer of Somersault's products. *Id.* ¶ 9; *Id.*, Ex. A ("Agreement"). In summer 2017, Baptista allegedly informed Somersault that it was going to raise the price of manufacturing Somersault's products by more than 70%. *Id.* ¶ 14. Somersault contested the price hike, arguing that Baptista could not raise its prices without a cost justification until December 2018. *Id.* ¶ 15. According to Somersault, Baptista responded that it was going to terminate the Agreement. *Id.* ¶ 16. Baptista also allegedly began producing defective products that did not conform with the specifications agreed to by the parties. *Id.* ¶ 17. Such defects included products that had packaging that was not completely sealed or were overcooked, undercooked, or moldy. *Id.*

Somersault claims that it repeatedly informed Baptista of the product defects. Compl. ¶ 19. It also "requested an opportunity to inspect the manufacturing of Somersault's products during product runs," but Baptista allegedly did not allow Somersault to attend the product runs. *Id.* ¶¶ 19-20. Despite the poor quality of the products, Somersault did not stop selling the products because Baptista was its exclusive manufacturer and "having no products in the marketplace for several weeks would have been disastrous to Somersault's sales and business." *Id.* ¶ 23. According to Somersault, Baptista's defective products are "worth less than non-defective products would have been," resulting in damage to Somersault's brand and loss of customers. *Id.* ¶¶ 25-26.

Somersault brings a breach of contract claim based on the implied covenant of good faith and fair dealing. Compl. ¶¶ 29-34. Baptista moves to dismiss the complaint on the basis that Somersault failed to adequately plead its claim. Jurisdiction is based on the diversity of the parties. *Id.* at ¶¶ 2-3.

## II.     LEGAL STANDARD FOR RULE 12(B)(6) MOTIONS

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

As a general rule, a court may not consider "any material beyond the pleadings" when ruling

on a Rule 12(b)(6) motion. *Lee*, 250 F.3d at 688 (citation and quotation marks omitted). However, "a court may take judicial notice of 'matters of public record,'" *id*. at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith*, 307 F.3d at 1125-26. The court need not accept as true allegations that contradict facts which may be judicially noticed. *See Mullis v. U.S. Bankr. Court*, 828 F.2d 1385, 1388 (9th Cir. 1987).

## III. ANALYSIS

The Agreement designates Delaware law as controlling. *See* Agreement § 22. A federal court sitting in diversity applies the choice of law rules of the forum in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). "Under California conflict of law rules, the parties may agree to what law controls, unless the choice is contrary to a fundamental interest of a state with a materially greater interest." *Rennick v. O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309, 313 (9th Cir. 1996). Neither party disputes that the Agreement's choice-of-law provision applies here. Accordingly, Somersault's breach of contract claim is governed by Delaware law.

In Delaware, the elements for a breach of contract claims are (1) "the existence of the contract, whether express or implied"; (2) "the breach of an obligation imposed by that contract"; and (3) "the resultant damage to the plaintiff." *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 389 (3d Cir. 2016) (quoting *VLIW Tech., LLC v. Hewlett Packard Co.*, 84 A.2d 606, 612 (Del. 2003)). Under Delaware law, "the proper interpretation of language in a contract is a question of law." *Ross v. Thomas*, 728 F. Supp. 2d 274, 281 (S.D.N.Y. 2010) (quoting *Allied Capital Corp. v. GC–Sun Holdings, L.P.*, 910 A.2d 1020, 1030 (Del. Ch. 2006)) (applying Delaware law). "Clear and unambiguous language found in a contract is to be given its ordinary and usual meaning." *Anderson v. Wachovia Mortg. Corp.*, 497 F. Supp. 2d 572, 581 (D. Del. 2007) (further quotations and citations omitted).

Baptista challenges Somersault's complaint on two bases: (1) that Somersault has not

3

adequately pleaded that Baptista breached an obligation imposed by the Agreement and (2) that Somersault's claimed damages are not available under the Agreement.

### A. Breach of Contract

Somersault asserts that Baptista has breached both the express and implied terms of the contract. These arguments are addressed in turn.

#### 1. Express Contract Terms

As an initial matter, the complaint does not make specific allegations that Baptista breached the express terms of the contract. Under its sole cause of action for breach of contract, Somersault refers to the implied covenant of good faith and fair dealing and the Agreement's indemnification clause but does not clearly explain which provisions of the Agreement Baptista allegedly breached. *See* Compl. ¶¶ 29-34.

In its opposition brief, Somersault identifies four contract provisions that Baptista allegedly breached. First, it cites paragraph 3.1 of the Agreement, which provides that "Supplier will supply Products according to the formulations and specifications for each Product . . . furnished by Somersault to Supplier . . . ." Agreement ¶ 3.1. Somersault argues that Baptista breached this provision by providing Somersault with "numerous non-conforming products." Opp. at 5. Although Somersault's allegations about the defective products are in the complaint, the complaint does not cite paragraph 3.1 nor is it otherwise clear that Somersault's cause of action is based in part on this provision. Therefore, Somersault shall amend its complaint to identify this provision and describe how Baptista's actions constitute a breach of it.

Second, Somersault relies on paragraph 8.2(b), which provides that provides that "No act or omission of Supplier in performing its obligations under this Agreement will contribute to or result in . . . any Product failing to be of merchantable quality, fit for its intended purpose as food for human consumption." Agreement ¶ 8.2. While Somersault cites paragraph 8.2(b) in the complaint, it is ambiguous as to whether Somersault alleges that the products at issue were not fit for human consumption. Somersault claims that the products were overcooked, undercooked, and moldy (among other issues), but it does not specifically assert that these defects rendered the products unfit for human consumption as required by paragraph 8.2(b). Accordingly, Somersault shall amend its

4

complaint to clarify its allegations regarding paragraph 8.2(b).

Third, Somersault cites paragraph 9.4, which permits it to inspect Baptista's facilities. Paragraph 9.4 is mentioned in the complaint. Compl. ¶ 11. Further, Somersault alleges that Baptista prohibited it from inspecting the areas where Baptista manufactured the products. *Id.* ¶ 32. Baptista argues that Somersault had other opportunities to inspect the products before accepting them, and so there was no violation of section 9.4 to support a breach of contract claim. Mot. at 3. However, Baptista's contention goes to the merits of the claim and not to whether the claim is adequately pleaded. As a pleading matter, Somersault has sufficiently alleged a breach of section 9.4.

Finally, paragraphs 17.1-4 lay out the indemnification provisions of the Agreement and Somersault argues that Baptista breached these provisions by refusing to indemnify Somersault for the damages caused by Baptista's breaches. Opp. at 5. Even assuming the indemnification clause applies to Baptista, which the parties dispute, that provision itself cannot serve as the basis for a breach of contract claim. *See Greenstar, LLC v. Heller*, 934 F. Supp. 2d 672, 692 (D. Del. 2013) ("A plaintiff's claim for breach of the indemnification provisions of the Agreement becomes ripe after liability for breach of the Agreement . . . has been established."); *see also LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 197–98 (Del. 2009) ("In a contract . . . in which one party agrees to indemnify the other for damages . . . arising from that party's breach of the contract, the term 'indemnity' has a distinct legal meaning that permits the party seeking indemnification to bring a separate cause of action for indemnification after first bringing a successful action for breach of the contract.").

Since an indemnification claim is brought after a successful breach of contract action, logically it cannot serve as the basis for the preceding claim. At the hearing, Somersault conceded that a breach must be established before indemnification becomes relevant. It also argued that the indemnification issue could be determined in this action after the court rules on the merits. The court finds that a potential indemnification claim presents a separate issue that is inappropriate to address at this juncture. Accordingly, Somersault's allegations regarding the indemnification clause are dismissed without prejudice.

Somersault is granted leave to amend its complaint to address the deficiencies identified

5

above, where possible.

### 2. Implied Contract

In order to plead a breach of an implied covenant of good faith and fair dealing, the plaintiff must allege the existence of "a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff." *Anderson*, 497 F. Supp. 2d at 581-82 (quoting *Fitzgerald v. Cantor*, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998)) (further citations omitted). In evaluating an implied covenant claim, the court decides "whether the language of the contract expressly covers a particular issue, in which case the implied covenant will not apply, or whether the contract is silent on the subject, revealing a gap that the implied covenant might fill." *Reklam v. Bellator Sport Worldwide LLC*, 2017 WL 5172397, at *5 (D. Del. Nov. 8, 2017), *report and recommendation adopted*, 2017 WL 5985562 (D. Del. Dec. 1, 2017). "The implied covenant will not infer language that contradicts a clear exercise of an express contractual right." *Nemec v. Shrader*, 991 A.2d 1120, 1127 (Del. 2010). The court must "assess the parties' reasonable expectations at the time of contracting and not rewrite the contract to appease a party who later wishes to rewrite a contract he now believes to have been a bad deal." *Id.* at 1126.

Somersault alleges that there are two implied terms in the Agreement that serve as a basis for this claim, namely that Baptista "(1) could not abandon quality control procedures in order to punish Plaintiff or deprive Plaintiff of the benefits of the Agreement; and (2) could not refuse to manufacture replacement products in a timely fashion." Opp. at 6. Baptista responds that the issues of quality control and timely delivery of products are addressed in the contract, which provides Somersault remedies in case it finds its products do not conform with specifications. Reply at 3. For example, paragraph 5.4 of the Agreement provides that "[i]f prior to Somersault's acceptance any portion of a shipment of Products is found to not be in compliance with the Specifications, Somersault may avail itself of any and all remedies available to it," including cancelling the order or returning the shipment to Baptista, at Baptista's cost. According to Baptista, there cannot be a breach of the implied covenant of good faith and fair dealing because the agreement explicitly covers the terms that Somersault states are implied.

Baptista's arguments are not persuasive. While the provisions it cites plausibly provide

remedies for some of the conduct alleged by Somersault, they do not contradict the implied terms alleged by Somersault. There is no contractual provision that permits Baptista to abandon quality control procedures when the parties disagree about the terms of the contract, as alleged by Somersault. There is also no explicit contractual term governing the timing of delivering products, which Baptista conceded at the hearing. The implied terms suggested by Somersault are not contradicted by the express language of the contract and therefore may serve as the basis for a breach of the implied covenant of good faith and fair dealing.

### B. Damages

Baptista argues that the complaint is only seeking consequential damages, which are barred by the Agreement's limitation of liability clause. It asserts that because Somersault has not alleged that it suffered any recoverable damages, the complaint must be dismissed. Somersault raises two arguments in response. First, it asserts that it seeks direct rather than consequential damages as a result of Baptista's alleged breach of warranty. Opp. at 5. Second, it contends that it can also recover consequential damages despite the limitation of liability clause because of the essential purpose doctrine. *Id.*, fn. 2.

#### 1. Direct Damages

Somersault argues that it is entitled to direct damages as a result of Baptista's alleged breach of contract, where direct damages are defined as "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." *See* Del. Code Ann. tit. 6, § 2-714(2). It contends that these damages are not excluded by the Agreement's limitation of liability provision, which excludes only incidental and consequential damages. Opp. at 5.

The authority Somersault cites relates to breach of warranty claims. *See* Del. Code Ann. tit. 6, § 2-714(2) (providing "[t]he measure of damages for *breach of warranty*" (emphasis added)). The sole claim for relief in the complaint is for the breach of the implied covenant of good faith and fair dealing. Somersault has not pleaded a breach of warranty claim to support its claim for direct damages under section 2-714(2). Nor has it provided authority for what direct damages are available

7

for its other causes of action.

In its amended complaint, Somersault shall identify each class of damages it is seeking and which causes of action support those damages.

### 2. Consequential Damages

"Delaware law permits parties to limit or alter the measure of damages recoverable under a contract," such as through a limitation of liability provision. *OC Tint Shop, Inc. v. CPFilms, Inc.*, 2018 WL 4658211, at *3 (D. Del. Sept. 27, 2018) (quoting Del. Code Ann. tit. 6 § 2-719(1), (3)) (internal quotation marks omitted). Where the parties contract for an exclusive remedy "in substitution for the measure of damages recoverable under the Code, that remedy is the buyer's sole recourse." *Beal v. Gen. Motors Corp.*, 354 F. Supp. 423, 427 (D. Del. 1973) (internal quotation marks omitted). But if the contracted-for remedy "fail[s] of its essential purpose, the purchaser may resort to the remedies provided by the Uniform Commercial Code." *Norman Gershman's Things To Wear, Inc. v. Mercedes-Benz of N. Am., Inc.*, 558 A.2d 1066, 1070–71 (Del. Super. Ct. 1989) (citing Del. Code Ann. tit. 6, § 2-719(2)). In other words, the parties are not bound by limitation of liability provisions if the exclusive alternate remedies provided by the contract fail of their essential purposes.

The limitation of liability provision in the Agreement prohibits the recovery of consequential damages:

> **IN NO EVENT SHALL ANY PARTY, OR SUCH PARTY'S PARENT ENTITY, DIRECTORS, OFFICERS, EMPLOYEES, AGENTS OR AFFILIATES, BE LIABLE TO THE OTHER PARTY FOR ANY CONSEQUENTIAL, INCIDENTAL, INDIRECT, SPECIAL, PUNITIVE OR EXEMPLARY DAMAGES, COSTS OR EXPENSES (INCLUDING BUT NOT LIMITED TO, LOST PROFITS, LOST REVENUES AND/OR LOST SAVINGS), WHETHER BASED UPON A CLAIM OR ACTION OF CONTRACT, WARRANTY, NEGLIGENCE, STRICT LIABILITY OR OTHERWISE.**

Agreement § 25 (bold font and capitalization in original). Baptista seeks to dismiss Somersault's complaint insofar as it seeks consequential damages because these are explicitly prohibited by the provision quoted above. Somersault contends that the limitation of liability provision is unenforceable because of the essential purpose doctrine.

"It has been repeatedly recognized that the issue of whether limitation provisions are

8

enforceable under the contractual relations of the parties and the nature of the contractual performance are matters which generally should not be decided on the pleadings or on summary judgment." *J. A. Jones Const. Co. v. City of Dover*, 372 A.2d 540, 553 (Del. Super. Ct. 1977) (citing cases). As noted in *Livery Coach Sols., L.L.C. v. Music Express/E., Inc.*, 245 F. Supp. 3d 639 (D. Del. 2017), "Delaware courts have sometimes been able to resolve disputes as to enforceability of a limited liability clause on summary judgment." 245 F. Supp. 3d at 650 n. 5 (citing cases). Other courts have found triable issues of fact relating to enforceability. *Petroleum v. Magellan Terminals Holdings, L.P.*, 2015 WL 3885947, at *24 (Del. Super. Ct. June 23, 2015) (declining to enforce a limitations of damages clause at the summary judgment stage because the analysis requires an examination of the "particular facts of the parties' conduct"); *MMCA Grp., LTD v. Hewlett-Packard Co.*, No. 06-cv-7067-MMC, 2010 WL 147937, at *2 (N.D. Cal. Jan. 12, 2010) (declining summary judgment on a limitation of liability clause under Delaware law).

Particularly given that Somersault briefed the essential purpose doctrine in a footnote, the court declines to decide now whether this issue is appropriate for summary judgment or must be resolved at trial. Regardless, the inquiry is premature at the pleadings stage. *See Data Centers, LLC v. 1743 Holdings LLC*, 2015 WL 9464503, at *5 (Del. Super. Ct. Oct. 27, 2015) ("Despite the court's best efforts, it is unable to locate any case where a Delaware court enforced a purported limitation on damages upon a motion to dismiss."). Accordingly, Baptista's motion to dismiss Somersault's claim for consequential damages is denied.

## IV. CONCLUSION

For the foregoing reasons, the court grants in part and denies in part Baptista's motion to dismiss. By December 4, 2019, Somersault must file an amended complaint that addresses the deficiencies identified in this order. A further case management conference is scheduled for January 15, 2020 at 1:30 p.m. An updated joint case management statement is due by January 8, 2020.

**IT IS SO ORDERED.**

Dated: November 20, 2019

_____
Donna M. Ryu
United States Magistrate Judge